UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| NOEL CARDOSO-GONZALEZ, Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-16585 |
| ANADARKO PETROLEUM CORPORATION, ET AL., Defendants | SECTION: "E" (1) |

## ORDER AND REASONS

Before the Court are two motions for summary judgment filed by Crossclaim Defendant Anadarko Petroleum Corporation ("Anadarko").[1] In the first motion, Anadarko seeks a ruling that the indemnity and insurance provisions in its Master Service Contract with Crossclaim Plaintiff W-Industries of Louisiana, L.L.C. ("W-Industries") is unenforceable under the Louisiana Oilfield Indemnity Act ("LOIA"), and that Anadarko is entitled to judgment as a matter of law on W-Industries' crossclaim.[2] W-Industries, LLC filed an opposition.[3] Anadarko filed a supplemental memorandum in support of its motion.[4]

In the second motion, Anadarko seeks a ruling that the analogous provisions in its Master Service Contract with Crossclaim Plaintiff Dolphin Services, L.L.C. ("Dolphin") are invalid, and that Anadarko is entitled to judgment as a matter of law on Dolphin's crossclaim.[5] Dolphin has not filed an opposition.[6]

---

[1] R. Docs. 75, 77.
[2] R. Doc. 75.
[3] R. Doc. 89.
[4] R. Doc. 75.
[5] R. Doc. 77.
[6] Accordingly, the Court considers the Defendant's statement of uncontested facts to be admitted pursuant to Local Rule 56.2. Although the motion for summary judgment is unopposed, summary judgment is not automatic, and the Court must determine whether the Defendant has shown an entitlement to judgment as a matter of law. *See, e.g., Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006). FED. R. CIV. P. 56(a).

1

Because the issues raised in the two motions are identical, the Court will address them together. For the reasons that follow, Anadarko's motions are **GRANTED**.

## BACKGROUND

Plaintiff Noel Cardoso-Gonzales alleges that on August 13, 2016, he was working aboard the LUCIUS spar, an offshore oil and gas production platform, when an unsecured cable tray fell from overhead, striking him between the shoulder and neck.[7] Plaintiff alleges the incident resulted in severe and disabling injuries.[8] On November 23, 2016, Plaintiff filed suit against (1) Anadarko Petroleum Corporation, the owner and/or operator of the LUCIUS; (2) W-Industries, which provided electrical services on the LUCIUS;[9] (3) Dolphin, which provided construction services on the LUCIUS;[10] (4) Safezone Safety Systems, LLC; and (5) Gulf South Services, Inc., the spar's scaffolding supplier.[11] Plaintiff asserts negligence claims against all defendants.[12]

On November 9, 2017, Dolphin filed a crossclaim against Anadarko, seeking defense and indemnity from Plaintiff's claims pursuant to its Master Service Contract ("MSC") with Anadarko.[13] W-Industries filed a crossclaim on November 15, 2017 on the same grounds.[14] The MSCs include indemnity and insurance sections that provide standard "knock for knock" provisions pursuant to which the parties agree to indemnify each other for personal injuries sustained by their respective employees and invitees regardless of fault.[15] Specifically, the W-Industries' MSC provides:

---

[7] R. Doc. 6 at 2-4. A cable tray is a metal tray through which various cables run. *See* R. Doc. 32-2 at 2 (Deposition of Louis De La Sierra).
[8] R. Doc. 6 at 3.
[9] R. Doc. 32-6 at 2 (Deposition of Sullivan J. Fortner).
[10] *Id.*
[11] R. Doc. 32-4 at 3 (Deposition of Brandon Mouton).
[12] R. Doc. 6 at 3.
[13] R. Doc. 43. Anadarko and Dolphin entered into a MSC on March 21, 2001. R. Doc. 77-4 at 1.
[14] R. Doc. 48. Anadarko and W-Industries entered into a MSC on December 7, 2009. R. Doc. 75-4 at 1.
[15] R. Doc. 75-2 at ¶ 11. R. Doc. 89-1 at ¶ 11. *See* R. Doc. 75-4 at 5.

> Company agrees to be responsible for and assume all liability for and hereby agrees to defend, release, indemnify, and hold harmless contractor indemnitees against claims arising in connection with; (i) bodily injury to and/or death of company's personnel and company's invitees; and/or (ii) subject to section 5, damage to property of company, company's personnel, and its and their invitees; arising in connection with this agreement, regardless of fault.[16]

The MSC between Anadarko and Dolphin provides:

> The company agrees to be responsible for and assume all liability for and hereby agrees to defend, release, indemnify, and hold harmless the contractor indemnitees against claims arising in connection with: (i) bodily injury and/or death to company's employees, company's subcontractors and their employees, and company's invitees; and/or (ii) damage to property of company's employees and company's subcontractors and their employees, and company's invitees; arising out of or resulting from the performance of this agreement, regardless of fault. The indemnity obligations set forth in this paragraph 14(b) shall include any medical, compensation, or other benefits paid by contractor or any member of contractor indemnitees and shall apply even if the employee is determined to be the borrowed or statutory employee of contractor or any other member of contractor indemnitees.[17]

The MSCs also establish that each party must provide insurance coverage "for the benefit of the other" to cover the indemnity obligations included in the agreement.[18] Specifically, Exhibit B of W-Industries' MSC requires each party to obtain "General Liability Insurance with limits of $1,000,000 combined single limit per occurrence, including, but not limited to, coverage for public liability including bodily injury and property damage liability, personal/advertising injury, contractual liability for those liabilities assumed by the Party herein, cross liability and severability of interest[.]"[19] Similarly, the MSC between Anadarko and Dolphin provides that "The party's insurers

---

[16] R. Doc. 75-4 at 5 ¶ 13(d). R. Doc. 77-4 at 4 ¶ 14(d).
[17] R. Doc. 77-4 at 4.
[18] R. Doc. 89-1 at ¶ 12.
[19] R. Doc. 75-4 at 9.

name Company Indemnitees or Contractor Indemnitees, which ever is applicable, as additional insureds (except for Worker's Compensation and Property Insurance)."[20]

Anadarko now moves for summary judgment, asserting the indemnity and insurance coverage provisions in the MSCs are null and void under Louisiana law.[21] These are the undisputed facts relevant to these motions. Anadarko owns and operates the LUCIUS platform, an offshore oil and gas platform located in the Gulf of Mexico off the coast of Louisiana.[22] Anadarko decided to expand the platform by adding an amine unit, which would remove $CO_2$ impurities from the natural gas produced from the platform.[23] This project is referred to as the "Amine Project."[24] Anadarko hired W-Industries to provide electrical services on the LUCIUS for the Amine Project, which included installing cable trays and running cable, and Anadarko and W-Industries entered into a MSC dated December 7, 2009.[25] Anadarko hired Dolphin to provide construction services, including the installation of the brackets upon which the cable trays are secured, for the Amine Project.[26] Anadarko and Dolphin entered into a MSC on March 21, 2001.[27]

Anadarko argues that, although the MSCs contain a choice of law provision specifying that Texas law will govern any state claims between the parties, the federal Outer Continental Shelf Lands Act requires that the laws of the "adjacent state"—in this case, Louisiana—should apply.[28] Anadarko contends that under Louisiana law, the indemnity and insurance provisions in the MSCs are null and void pursuant to the LOIA.[29]

---

[20] R. Doc. 77-4 at 3.
[21] R. Doc. 77-1 at 2.
[22] R. Doc. 75-2 at ¶ 2. R. Doc. 89-1 at ¶ 2.
[23] R. Doc. 75-2 at ¶ 4. R. Doc. 77-2 at ¶ 4. R. Doc. 89-1 at ¶ 4.
[24] R. Doc. 75-2 at ¶ 3. R. Doc. 77-2 at ¶ 3. R. Doc. 89-1 at ¶ 3.
[25] R. Doc. 75-2 at ¶ 1, 5. R. Doc. 89-1 at ¶ 1, 5.
[26] R. Doc. 77-2 at ¶ 7.
[27] R. Doc. 77-2 at ¶ 1.
[28] R. Doc. 75-1 at 5. *See Snyder Oil Corp v. Samedan Oil Corp.*, 208 F.3d 521, 522-23 (5th Cir. 2000).
[29] See LA. REV. STAT. 9:2780.

Anadarko asserts that, as a result, it is entitled to judgment as matter of law on the crossclaims of W-Industries and Dolphin.

W-Industries filed an opposition to Anadarko's motion.[30] To date, Dolphin has not filed an opposition to Anadarko's motion.

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] "An issue is material if its resolution could affect the outcome of the action."[32] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[33] All reasonable inferences are drawn in favor of the nonmoving party.[34] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[35]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[36] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving

---

[30] R. Doc. 89.
[31] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[32] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[34] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[35] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[36] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[37]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[38] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[39] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[40] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[41] If the movant meets this

---

[37] *Celotex*, 477 U.S. at 322–24.
[38] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[39] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[40] *Celotex*, 477 U.S. at 332–33.
[41] *Id.*

burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[42] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[43]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[44]

## **LAW AND ANALYSIS**

### I. Choice of Law

To determine whether the indemnity and insurance provisions in the parties' MSCs are enforceable, the Court must first determine which law applies. The MSCs specifically provide that Texas law governs any state law claims between the parties, "exclusive of any principles of conflicts of laws which would direct application of the substantive laws of another jurisdiction."[45] Anadarko asserts that as the LUCIUS is a floating platform

---

[42] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[43] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[44] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[45] R. Doc. 75-4 at ¶ 12. R. Doc. 77-4 at ¶ 13.

attached to the seafloor, OCSLA governs the choice of law analysis in this case.[46] OSCLA applies to "all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom."[47] OCSLA supersedes the normal choice-of-law rules that the forum would apply, requiring courts to apply the "civil and criminal laws of [the] adjacent state."[48] The LUCIUS is anchored to the seabed off the coast of Louisiana, and as a result Louisiana is the "adjacent state."[49]

Courts look to the three-part test formulated by the United States Supreme Court in *Rodrigue v. Aetna Cas. & Surety Co.*[50] to determine whether OCSLA requires application of the adjacent state's law in the present matter. This test requires, "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structure permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with federal law."[51] When a case involves a contractual indemnity provision, the Fifth Circuit holds:

> [A] contractual indemnity claim (or any other contractual dispute) arises on an OCSLA situs if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A). It is immaterial whether the underlying incident that triggers the indemnity obligation occurs on navigable waters or on a platform or other OCSLA situs.[52]

---

[46] R. Doc. 77-1 at 5.
[47] 43 U.S.C. § 13:33(A)(1).
[48] 43 U.S.C. § 1333(a)(2)(A). See *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 522-23 (5th Cir. 2000).
[49] R. Doc. 75-2 at ¶ 2. R. Doc. 89-1 at ¶ 2.
[50] 395 U.S. 352 (1969). *See also Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).
[51] *Rodrigue*, 395 U.S. at 359.
[52] *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009).

First, the parties do not dispute that the LUCIUS is a production platform anchored to the subsoil seabed off Louisiana's Gulf coast.[53] It is also undisputed that the MSCs between the parties specifically provided for electrical and construction services in support of the Lucius Amine project aboard the LUCIUS. Accordingly, the Court finds the controversy arose on an OCSLA situs.

As to the second prong, no party has argued that general maritime law should govern either the Plaintiff's tort claims or the parties' contractual dispute. Indeed, W-Industries' opposition implicitly concedes that state law applies.[54]

Third, the Court must determine whether the state law that would apply by virtue of OCSLA is inconsistent with federal law. The Fifth Circuit holds that the LOIA does not conflict with federal law.[55]

Accordingly, having found that the three prongs of the *Rodrique* test have been met, the Court concludes that OCSLA applies in this case.

Notwithstanding OCSLA, the Court must consider whether the choice-of-law provision in the contract overrides any other legal basis for determining the applicable law.[56] Both federal and Louisiana state courts routinely disregard choice-of-law provisions in master service contracts when OCSLA requires the application of adjacent law.[57] In *Matte v. Zapata Offshore Co.*, for example, the Fifth Circuit addressed whether a choice-of-law provision that selected general maritime law trumped the application of

---

[53] R. Doc. 77-1 at 5-6. In analogous cases, the Fifth Circuit found that spars similar to LUCIUS were fixed platforms, rather than vessels, and thus subject to OCSLA. *See Mendez v. Anadarko Petroleum Corp.*, 466 Fed. App'x 316, 318-19 (5th Cir. 2012); *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 359 (5th Cir. 1999).
[54] R. Doc. 89.
[55] *See Matte v. Zapata Offshore Co.*, 784 F.2d 628, 630 (5th Cir.1986).
[56] *See Duet v. Falgout Offshore, LLC*, 757 F. Supp. 2d 598 (E.D. La. 2010).
[57] *Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 943 (5th Cir. 2000); *Matte v. Zapata Offshore Co.*, 784 F.2d 628 (5th Cir. 1986); *Silverman v. Mike Rogers Drilling Co., Inc.*, 34 So.3d 1099, 1104 (La. App. 2 Cir. 4/14/10).

OCSLA.[58] The court held that the choice-of-law provision "violates the public policy of both Louisiana and the United States," and voided the provision.[59] In this case, the Court similarly finds that the choice-of-law provisions in the MSCs are void because they conflict with the application of OCSLA and the LOIA. Accordingly, the Court shall disregard the choice-of-law provision in the parties' MSCs and apply Louisiana law pursuant to OCSLA.

## II. Indemnity

The LOIA was enacted after an express legislative finding "that an inequity is foisted upon certain contractors and their employees by the defense or indemnity provisos . . . contained in some agreements pertaining to wells for oil, gas or water."[60] As a result, the LOIA "declare[s] null and void and against public policy . . . any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee . . . ."[61] To determine if the provisions of the LOIA apply to a given contract, the Fifth Circuit has fashioned a two-part inquiry:

> First, there must be an agreement that "pertains to" an oil, gas or water well. If the contract does not pertain to a well, the inquiry ends. Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process, examination of the contract's involvement with "operations related to the exploration, development, production, or transportation of oil, gas, or water" . . . Therefore, if (but only if) the agreement (1) pertains to a well and (2) is related to exploration, development, production, or transportation of oil, gas, or water, will the Act invalidate any indemnity provision contained in or collateral to that agreement.[62]

---

[58] 784 F.2d 628 (5th Cir. 1986).
[59] *Id.* at 631-32.
[60] LA. REV. STAT. 9:2780.
[61] LA. REV. STAT. § 9:2780(A).
[62] *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 991 (5th Cir. 1992); *Fontenot v. Chevron U.S.A. Inc.*, 95-1425 (La. 7/02/96); 676 So. 2d 557, 564.

Whether the LOIA applies should be considered in relation to the nature of the contract, rather than the task or activity that led to the incident.[63] As a result, the activities giving rise to the claim need not have been rendered at the offshore site or in connection with the drilling or operation of a particular site in order to fall within the bounds of the LOIA.[64]

At the first step of the inquiry, W-Industries' MSC provides W-Industries will supply "onshore and Offshore Amine Upgrade Support" for the Lucius Amine project.[65] As a result, the agreement clearly "pertains to" an oil, gas, or water well. Second, as noted above, the Amine Project involved the installation of equipment related to the production of natural gas from the wells connected to the LUCIUS. Therefore, the Court finds that the MSC "is related to" the exploration, development and production of oil and gas.

Similarly, Dolphin's MSC establishes that Dolphin Services was hired to provide the "supply of materials, labor, equipment, and third party services for onshore and offshore fabrication, installation, and maintenance of new and existing company facilities."[66] As the work performed aboard the LUCIUS was related to the installation of equipment connected to the production of natural gas of nearby wells, the MSC "pertains to a well" and is "related to exploration, development, production, or transportation" of natural gas.

For these reasons, the Court concludes the LOIA applies to the MSCs in this case, and the indemnity provisions contained therein are invalid.

---

[63] *Grand Isle Shipyard v. Gray Insurance Co.*, 589 F.3d 778 (5th Cir. 2009); *Hodgen v. Forest Oil Corp.*, 115 F.3d 358 (5th Cir. 1997).
[64] *See Grand Isle Shipyard* at 787 (5th Cir. 2009).
[65] R. Doc. 75-5 at 1 (Master Service Contract Exhibit "A," Work Order).
[66] R. Doc. 77-4 at 1 ¶1.

### III. Insurance

As discussed above, W-Industries' and Dolphin's MSCs provide that "each Party shall carry and maintain for the benefit of the other Party, the following minimum insurance coverage with policy territory sufficient to cover the Work hereunder.[67] Anadarko contends that these provisions are invalid under the LOIA, and that, as a result, it is entitled to summary judgment on the Crossclaim Plaintiffs' demands for insurance.[68]

The LOIA prohibits contracting parties from using insurance agreements to circumvent the law's anti-indemnity provisions:

> G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revises Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.[69]

Consistent with the express language of Subsection G, courts generally hold that contractual provisions requiring the contractor to extend its insurance coverage to cover the principal's acts of negligence or fault are void under the LOIA because these insurance arrangements frustrate the purpose of the Act.[70] "Subsection G expressly invalidates agreements requiring 'additional named insured endorsements or any other form of insurance protection which would frustrate or circumvent the prohibitions of this section.'"[71]

Considering Anadarko's arguments, the case law, and the summary judgment record, the Court concludes that the additional insured provisions in the MSCs are null

---

[67] R. Doc. 75-4 at 9 ¶ a. R. Doc. 774 at 2 ¶ 12.
[68] R. Doc. 75-1 at 9-10. R. Doc. 77 at 9-11.
[69] LA. REV. STAT. 9:2780(G).
[70] *See, e.g.*, *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 480 (5th Cir. 2002); *Roberts v. Energy Dev. Corp*, 235 F.3d 935 (5th Cir. 2000).
[71] *Babineaux v. McBroom Rig Bldg.*, 806 F.2d 1282, 1284 (5th Cir. 1987).

and void. Anadarko is entitled to summary judgment on W-Industries' and Dolphin's crossclaim for insurance.

## IV. *Meloy* Exception Does Not Apply

As a final matter, the Court will address W-Industries' assertion that summary judgment on this issue is premature. In its opposition to Anadarko's motion,[72] W-Industries does not argue the merits of the motion, but instead contends that granting the motion for summary judgment would be premature based on the Louisiana Supreme Court's ruling in *Meloy v. Conoco*.[73] In that case, the Louisiana Supreme Court established an exception to the LOIA anti-indemnity rule that allows for the payment of defense costs when a potentially indemnified party is free from fault and the agreement provides for such an award.[74] W-Industries argues that, as a it may be entitled to recover attorneys' fees and costs from Anadarko if the plaintiff fails to prove fault by W-Industries, the motion for summary judgment is premature.[75]

In a supplemental memorandum in support of its motion for summary judgment, Anadarko argues that W-Industries misconstrues *Meloy*.[76] While the Supreme Court in *Meloy* did in fact recognize an exception for the payment of defense costs by parties who were not at fault, Anadarko notes the Supreme Court further held "a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid."[77] Anadarko contends *Meloy* actually supports the merits of Anadarko's motion, as the Supreme Court concluded in that case, "La. R.S. 9:2780

---

[72] R. Doc. 89.
[73] *Meloy v. Conoco*, 86-1466 (La. 4/16/1987), 504 So. 2d 833.
[74] *Id.* at 839.
[75] R. Doc. 89 at 1-2.
[76] R. Doc. 87.
[77] *Meloy*, 504 So. at 839.

13

nullifies completely any provision in any agreement that requires defense and/or indemnification where there is any negligence or fault on the part of the indemnitee."[78]

In this case, the Court agrees with Anadarko that "the potential existence of a *Meloy* claim does not prohibit the granting of this motion for summary judgment as W-Industries cannot assert a claim that it does not [yet] have."[79] As other courts in this circuit have noted, the *Meloy* exception only entitles an indemnitee to recover its costs *after a trial on the merits.*[80] As no trial on the merits has occurred, W-Industries *Meloy* claim is premature, and presents no obstacle to granting the present motion for summary judgment. In the event that W-Industries is ultimately found free from fault, its *Meloy* claim may be reurged.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Defendant Anadarko's motion for summary judgment regarding the crossclaim by W-Industries of Louisiana, LLC[81] is **GRANTED.** Anadarko is entitled to judgment as a matter of law in its favor on W-Industries' crossclaim.

**IT IS FURTHER ORDERED** that Defendant Anadarko's motion for summary judgment regarding the crossclaim by Dolphin Services, LLC[82] is **GRANTED**. Defendant Anadarko is entitled to judgment as a matter of law in its favor on Dolphin's crossclaim.

**New Orleans, Louisiana, this 20th day of June, 2018.**

                                    *Susie Morgan*
                                    **SUSIE MORGAN**
                         **UNITED STATES DISTRICT JUDGE**

---

[78] *Meloy*, 504 So. at 838.
[79] R. Doc. 87 at 3.
[80] *See, e.g.*, *Gautreaux v. Tetra Applied Technologies, LLC*, 2010 WL 1930925 (E.D. La. May 10, 2010).
[81] R. Doc. 75.
[82] R. Doc. 77.